# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

Jazmin Lizeth Cisneros Bustos, et. al.

        Plaintiffs,

    v.

ALEJANDRO MAYORKAS, U.S.
Secretary of the Department of Homeland
Security; TRACY RENAUD, Senior
Official Performing the Duties of the
Director of U.S. Citizenship and
Immigration Services; United States
Citizenship and Immigration Services;
MONTY WILKINSON, Acting U.S.
Attorney General; CHRISTOPHER
WRAY, Director of Federal Bureau of
Investigations; Federal Bureau of
Investigations; in their official capacity,

        Defendants.

Case No.: 20-cv-01348 KG/SMV

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

## INTRODUCTION

"What is reasoned has nothing to do with what is reasonable." Jose Bergamin. Black's Law Dictionary defines "reasonable" as "fair, proper or moderate under the circumstances." Defendants would argue that it is reasonable, fair, or proper for victims of serious crimes to wait five years just to be placed on a waiting list to receive basic protections they are entitled to by law. And as they know that argument is itself unreasonable, Defendants argue that this Court cannot review the length of time it takes them to adjudicate waiting list determinations, that they are above the law, or that the APA is meaningless.

It is undisputed that Congress created the U visa program to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases… while offering protections to victims of such offenses in keeping with the humanitarian interests of the United States." Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513(a)(2), 114 Stat. 1464, 1533 (2000). Though it is true that Congress put a statutory cap on the number of visas available, there is a mandatory waitlist process providing deferred action and work authorization for those who would be eligible for a visa but for the statutory cap. *See* C.F.R. § 214.14(d)(2). Additionally, and separately from the waitlist determination, Congress created a quick pathway for crime victims to receive work authorization before their cases had been decided on the merits, by allowing work permits for those with pending bona fide petitions. 8 U.S.C. § 1184(p)(6).

Contrary to congressional intent and despite statutes requiring them to adjudicate petitions within a reasonable time, Defendants have unreasonably delayed placing U visa applicants like Plaintiffs on the waiting list (which would provide deferred action and the opportunity for employment authorization) and refused to adjudicate employment authorization

based on a bona fide petition pursuant to 8 U.S.C. § 1184(p)(6). As a result, crime victims such as Plaintiffs who have risked their lives to come forward to report serious crimes and assist the police in criminal investigations are left entirely without protections for five years while they wait to be put on a waitlist.

While waiting five years just to be placed on a waitlist, Plaintiffs have no way to lawfully earn a living. As a result, many are forced to remain in the same jobs where they were victimized; are unable to move to safer neighborhoods; or are forced to remain under the control of abusive partners. All Plaintiffs are subject to removal by Defendants as they wait longer and longer periods of time for protections they are legally entitled to and they live in fear of being deported and separated from their families.

Defendants argue that adjudicating Plaintiffs' applications within a reasonable time would "set a dangerous precedent" and reward "more litigious applicants." *See* Doc. 4 at 3. They argue that because Plaintiffs have not differentiated themselves from other similarly situated Plaintiffs, they must wait in line, regardless of how unreasonably long that line is. Defendants argue that the amount of time they take do what they are congressionally mandated to do is beyond the jurisdiction of this Court. Under Defendants' arguments, as long as they are delaying all applications, any delay is per se reasonable and the APA reasonableness standard is rendered completely meaningless. Defendants' argument is what creates a "dangerous precedent," one where USCIS can delay adjudication indefinitely and is not subject to the APA's reasonableness standard, giving a government agency unbridled freedom from accountability.

## **STANDARD OF REVIEW**

In reviewing a Rule 12(b)(6) motion, the court accepts as true "all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the

2

Plaintiffs." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), cert. denied, 558 U.S. 1148 (2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Cop. v. Twombley*, 550 U.S. 544, 570 (2007)).

## DISCUSSION

### I.    This Court has jurisdiction over Plaintiffs' claims.

### a.  This Court has jurisdiction over Plaintiffs' APA and Mandamus claims.

Defendants argue that this Court lacks jurisdiction over the APA and Mandamus claims because "the speed at which USCIS operates is discretionary and therefore unreviewable under a jurisdiction-stripping statute, 8 U.S.C. §1252(a)(2)(B)(ii)." Doc. 4 at 2. To hold such would be to provide unfettered power to USCIS to indefinitely delay immigration benefits and render the APA and congressional intent meaningless. Defendants' argument also goes against existing 4th Circuit law and district court precedent in the majority of districts, including this one. *See Gonzalez v. Cuccinelli*, 985 F.3d 357, 361 (4th Cir. 2021) (holding that unreasonable delay claim under the APA for U visa waitlist adjudication was subject to judicial review); *see also Ramires v. Wolf*, 2020 WL 6146393 (D. N.M. 2020) (finding that this Court has jurisdiction over a similar APA claim for unreasonable delay); *M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 598 (W.D. Tex. 2019); *Rodriguez v. Nielsen*, 2018 WL 4783977 (E.D. N.Y. 2018*); Lopez v. Cissna*, 2018 WL 5013830 (D. S.C. 2018); *Gelfer v. Chertoff*, 2007 WL 902382 (N.D. 2007); *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1383 (M.D. Ga. 2019); *Haus v. Nielsen*, 2018 WL 1035870 (N.D. Ill. 2018);

*Camarena v. Cuccinelli*, 2020 WL 550597 (N.D. Ill. 2020) (all finding jurisdiction over APA claims for unreasonable delay in U visa waitlist adjudication)[1].

The Supreme Court has "long applied a strong presumption favoring judicial review of administrative action." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 489 (2015). "Unless 'there is persuasive reason to believe' that Congress intended to preclude judicial review, the Court will not preclude review." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2060 (2019) (internal quotations omitted). Given this presumption, courts have jurisdiction under the APA to hear claims brought against an agency for unreasonable delay as long as judicial review is not precluded by statute or the agency action is not committed by law to agency discretion. *See Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "Even if no statute specifically provides that an agency's decisions are subject to judicial review, the Supreme Court customarily refuse[s] to treat such silence 'as a denial of authority to [an] aggrieved person to seek appropriate relief in the federal courts,'" *Spencer Enterprises, Inc. v. U.S*, 345 F.3d 863, 687 (9th Cir. 2003) (quoting *Stark v. Wickard,* 321 U.S. 288, 309 (1944)).

Congress specifically designated USCIS as the agency responsible for "[a]djudications of immigrant visa petitions." 6 U.S.C. § 271(b)(1). Accordingly, Defendant USCIS has a nondiscretionary statutory duty to *adjudicate* U visas as "[t]he secretary cannot be charged with immigration administration and simultaneously have no duty to administrate. Such a result is

---

[1] Defendants cite to *Butanda v. Wolf*, 2021 WL 327714 (D. Colo. 2021) one district court decision which dismissed a similar complaint for lack of subject matter jurisdiction, finding "the pace of adjudication of a U-Visa and an employment authorization" to be discretionary under 8 U.S.C. § 1252(a)(2)(B)(ii). This statute states that no court shall have jurisdiction over decisions or actions that are in the discretion of the Secretary of Homeland Security. Waitlist determinations are not discretionary, nor is the pace of adjudication which is mandated to be reasonable under the APA therefore the court in *Butanda* erroneously dismissed the complaint for lack of jurisdiction.

irrational." *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008) (internal

citations and quotations omitted). "[USCIS] simply does not possess unfettered discretion to

relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is

explicitly foreclosed by the APA." *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004).

Defendants confuse their discretion to grant a discretionary benefit with a discretion to

not adjudicate a petition or application within a reasonable period of time. "While the USCIS's

decision to grant or deny a U Visa petition is discretionary, the question of whether that

adjudication has been unlawfully withheld or unreasonably delayed is not." *M.J.L. v. McAleenan*,

420 F.Supp.3d 588 (W.D. Tex. 2019).  Plaintiffs here, as in *M.J.L.,* are not seeking review of a

discretionary decision or action of USCIS with regard to their U Visa Applications. Plaintiffs

here, as in *M.J.L.* challenge "USCIS's delay and inaction with respect to their nondiscretionary

statutory duties to adjudicate U Visas under the INA." *Id*.

### b.  This Court has jurisdiction over Plaintiffs' claim under 8 U.S.C. § 1184(p)(6).

Defendants argue that "because the Secretary of Homeland Security has discretion under 8

U.S.C. § 1184(p)(6) to decide whether to grant work authorization while a U visa petition is

pending," "that decision is also unreviewable under Section § 1252(a)(2)(B)(ii) and the APA."

Doc. 4 at 2.  However, "The language of § 1252(a)(2)(B)(ii) .... refers not to 'discretionary

decisions,' ... but to acts the *authority* for which is *specified* under the INA to be discretionary."

*Spencer Enters., Inc. v. United States,* 345 F.3d 683, 689 (9th Cir. 2003)For that reason,

"[f]ederal appellate courts have ... construed § 1252(a)(2)(B)(ii) narrowly." *Al–Rifahe v.*

*Mayorkas,* 776 F.Supp. 2d 927, 932 (D. Minn. 2011); *see also Iddir v. INS,* 301 F.3d 492, 497

(7th Cir. 2002) (holding that § 1252(a)(2)(B) "only bars review of actual discretionary decisions

to grant or deny relief under the enumerated sections"). Plaintiffs are not requesting a review of a discretionary decision not to grant them work authorization under 1184(p)(6), but rather the failure to adjudicate their applications for work authorization at all.

When Congress gives an agency discretion over who to grant a benefit to, they are not giving them discretion not to make a decision at all. In *Kucana v. Holder,* 558 U.S. 233, 130 S.Ct. 827, 829 (2010),  the Supreme Court found that "Congress barred court review of discretionary decisions *only* when Congress itself set out the Attorney General's discretionary authority in statute." *Id.* at 247, 130 S.Ct. 827 (emphasis added). Plaintiffs do not seek review of agency action "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), but rather agency inaction. "While the decision to grant or deny Plaintiff's applications implicates an agency's exercise of discretion, the question of whether that adjudication has been unlawfully withheld or unreasonably delayed does not." *Rodriguez v. Nielsen*, 2018 WL 4783977, *7 (E.D. N.Y. 2018*) See also INS v. St. Cyr*, 533 U.S. 289, 307–08 (2001) (finding plaintiff had a right to a ruling, even if the outcome of that ruling is discretionary). [2]

## II.    The Complaint states a claim upon which relief may be granted under the APA.

The APA provides that "*within a reasonable time*, each agency *shall* proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added). To ensure that agencies comply with this provision, the APA provides that a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Defendants argue that "Plaintiffs do not

---

[2] Plaintiffs acknowledge that the 4th circuit, this Court, and other district courts have found they do not have jurisdiction over a claim for employment authorization under U.S.C. § 1184(p)(6). *See Gonzalez v. Cuccinelli*, 985 F.3d 357, 361 (4th Cir. 2021); *Ramires v. Wolf*, 2020 WL 6146393 (D. N.M. 2020) However at least one district court found that they did have jurisdiction, and Plaintiffs wish to preserve this argument. See *Rodriguez v. Nielsen*, 2018 WL 4783977 (E.D. N.Y. 2018*).

allege any facts indicating that their petitions fall under any of these limited exceptions to the general 'first in, first out' process." Doc 4 at 7. They argue that Plaintiffs have failed to state a claim because adjudicating their applications now would move them to the front of the line and prejudice other applicants who filed before them. Conclusory statements regarding the consequences of granting relief to Plaintiffs are not enough to counter their justified and legitimate legal claims of unreasonable delay. This argument is irrelevant, just because Defendants have unreasonably delayed other applications for longer than they have unreasonably delayed Plaintiffs does not prevent Plaintiffs from seeking relief under the APA. The Complaint contains sufficient allegations that, when accepted as true, state a plausible claim for relief under the APA.

Plaintiffs submitted bona fide petitions for U visa status and the majority of them also submitted applications for employment authorization between 26 and 52 months ago. Most of Plaintiffs applications have been pending for over 30 months and some for much longer. Defendants have neither placed them on the waitlist (which comes with a determination of employment eligibility and deferred action), nor adjudicated their petitions for employment authorization under 8 U.S.C. § 1184(p)(6). Plaintiffs have alleged harmed caused by Defendants' delay in adjudication. Differential or disparate treatment is not a requirement of the APA. The facts alleged in Plaintiffs' complaint, when accepted as true, state a claim to relief for unreasonable delay that is plausible on its face. *See Ramires v. Wolf*, 2020 WL 6146393 (D. N.M. 2020) (decision by this Court denying Defendants' motion to dismiss on similar facts)[3].

---

[3] *see also M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 598 (W.D. Tex. 2019); Rodriguez v. Nielsen, 2018 WL 4783977 (E.D. N.Y. 2018); *Lopez v. Cissna*, 2018 WL 5013830 (D. S.C. 2018); *Gelfer v. Chertoff*, No. C06-06724 WHA, 2007 WL 902382 (N.D. Cal. Mar. 22, 2007); *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1383 (M.D. Ga. 2019); *Haus v. Nielsen*, 2018 WL 1035870 (N.D. Ill. Feb. 23, 2018); *Camarena v. Cuccinelli*, 2020 WL 550597 (N.D. Ill. 2020)

Defendants have a non-discretionary duty to adjudicate immigration petitions and applications within a reasonable time. The Supreme Court has held in the context of immigration relief that when a statute provides specific standards of eligibility for a benefit or relief, an individual applying for that relief has a "right to a ruling," even if the *outcome* of that ruling is discretionary. *I.N.S. v. St. Cyr*, 533 U.S. 289, 307–08 (2001). Though Defendants argue otherwise, the agency does not have discretion on how long it takes to make a decision or whether to make a decision at all.

While Defendants are not obligated to grant Plaintiffs' EADs or place them on the waitlist if they are not eligible for the relief sought, Defendants *are* obligated to adjudicate their applications within a reasonable time. As the District Court for the Northern District of California found, an argument to the contrary "not only pushes the bounds of common sense but is also contradicted by a wealth of authority from this and other districts." *Soneji v. Department of Homeland Sec.*, 525 F. Supp. 2d 1151, 1155 (N.D. Cal. 2007). Also, as this Circuit has found, "when an agency is required to act—either by organic statute or by the APA—within an expeditious, prompt, or reasonable time, § 706 leaves in the courts the discretion to decide whether agency delay is unreasonable." *Forest Guardians v. Babbit*, 174 F.3d 1178, 1190 (10th Cir. 1999). The Complaint contains sufficient allegations that, when accepted as true, show that Defendants have unreasonably delayed action on Plaintiffs' petitions and state a plausible claim for relief under the APA. Defendants' Motion to Dismiss should be denied.

### a. <u>Defendants have unreasonably delayed adjudication of Plaintiffs' U Visa for placement on the waitlist.</u>

The regulations require that "*[a]ll eligible petitioners* who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list…" 8 C.F.R. § 214.14(d)(2) (emphasis added). It is an undisputed fact that Plaintiffs have now been waiting over 26-52

months to be placed on the waitlist. *See* Doc. 4 at 3. A waitlist determination generally provides

an EAD and deferred action which protects crime victims from becoming a deportation priority.

Though Defendants have discretion to grant employment authorization at the waitlist stage, they

do not have discretion to refuse to make a waitlist determination or refuse to adjudicate a petition

for employment authorization altogether. Defendants claim that there has been no unreasonable

delay for Plaintiffs because the regulation sets no adjudicative time frame for EAD applications,

because the delays affect all petitioners, and because their petition still falls within their own

published processing times of 59 to 59.5 months. *See* Doc. 4 at 4. Each of these arguments fails

to pass a reasonableness test.

Even if the regulations set no adjudicative time frame, EAD applications must be

adjudicated, and waitlist determinations must be made, within a reasonable time under the APA.

As the 10th Circuit found in *Forest Guardians*, "if an agency has no concrete deadline

establishing a date by which it must act" it is instead governed by "the APA's general admonition

that agencies conclude matters presented to them 'within a reasonable time,'" and a court must

compel action that is delayed unreasonably. *Forest Guardians v. Babbit*, 174 F.3d at 11.

Defendants also argue that Plaintiffs have failed to allege any facts suggesting that USCIS

has treated them differently from similarly situated petitioners. Doc. 4 at 19. The APA has no

requirement for disparate treatment as a necessary element of unreasonableness. *See* 5 U.S.C. §

555(b). Defendants cite to three District Court decisions that considered disparate treatment in

their reasonableness analysis.[4] Defendants' reliance on *Mashpee* is inappropriate because the

adjudication in *Mashpee* involved "an extremely complex and labor-intensive task" that requires

---

[4] *Mashpee*, 336 F.3d at 1000; *Calderon-Ramirez*, 877 F.3d at 275-76; *Gonzalez v. Cissna*, 364 F. Supp. 3d 579, 584 (E.D. NC 2019).

a "three-person team comprising of a historian, a cultural anthropologist, and a genealogist."

Additionally, the number of staff assigned to evaluate such petitions averaged at less than 11.

*Mashpee Wampanoag Trial Counsel, Inc. v. Norton*, 336 F.3d 1100 (D.C. Cir. 2003). USCIS has

far more resources dedicated to U visa adjudication, and the process is far less complex. Under

*Calderon-Ramirez*, the court found that differentiating facts were necessary for *expedition* of a U

visa petition. Plaintiffs are *not* requesting that USCIS expedite their petition, but rather that it be

adjudicated in a reasonable time.

Defendants argue that "USCIS has taken steps in recent years to address the U visa backlog

and ensure waitlist eligibility determinations are made as quickly as feasible." Doc 4 at 7. The

only "step" that Defendants could point to was the decision to begin processing U visa petitions

at the Nebraska Service Center in 2016. Despite this step, waitlist determinations have slowed

down significantly in recent years. Other District courts have not found this argument

convincing. *See Camarena v. Cuccinelli*, 2020 WL 550597 at *2, (finding that "[a]lthough the

Agency has accumulated 134,967 pending applications… it does not seem to have taken any

significant steps to reduce the backlog since August 2016…"). *See also Rodriguez v. Nielsen*,

2018 WL 4783977, at *20–21 (E.D. N.Y. 2018) (rejecting the argument that "any delay in

waiting list adjudications is reasonable in light of the high volume of applications the agency

receives").

The waitlist was created so that U visa applicants who would be granted a visa but for the

statutory cap would be given the protection of deferred action and employment authorization

while they await their visa. It is contrary to congressional intent, agency regulations, and the

rules of rationality and reasonableness to require crime victims to wait almost five years just to

be put on a waitlist to wait another several years for a visa. Processing times of 59 to 59.5

months just for a waitlist determination are per se unreasonable. Just because a delay is "not unusual," does not make it reasonable. *See Jefrey v. INS*, 710 F. Supp. 486 (S.D.N.Y. 1989). Further, "[a]n unreasonable delay that applies to every applicant is still unreasonable." *Camarena v. Cuccinelli*, 2020 WL 550597 at *3.

   b. **Defendants have unreasonably delayed adjudication of Plaintiffs' EADs under 8 U.S.C. § 1184(p)(6).**

   Additionally and separately from the waitlist determination which provides deferred action and an EAD in the c(14) category,  Plaintiffs have a right to adjudication of their EAD applications under 8 U.S.C. § 1184(p)(6). On December 23, 2008, after the waiting list regulatory system had been in place for approximately one year, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act (the "TVPRA"), Pub. L. 110-457, 122 Stat. 5044. The TVPRA included a new provision, codified in 8 U.S.C. § 1184(p)(6), specifying that the "Secretary [of DHS] may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6). The bill's sponsors explained that U Visa applicants "should not have to *wait for up to a year* before they can support themselves and their families," and that USCIS should strive to issue work authorization within 60 days of filing. *See* 154 Cong. Rec. H10,888, 10,905 (daily ed. Dec. 10, 2008) (statement of Reps. Berman and Conyers), 2008 WL 5169865. (emphasis added). At that point in time, Congress expected a waitlist determination to take about one year and found that even this would be unreasonable. Waitlist determinations are now taking approximately five years.

   Defendants argue that USCIS, "acting within the discretion granted by the plain language of the statute…did not separately implement 8 U.S.C. § 1184(p)(6)'s amended language." Doc. 4 at

8. Defendants conflate their discretion to grant or not grant employment authorization ("may grant") with their discretion to implement or not implement a congressional statute. Defendants are still required to adjudicate employment authorization for pending bona fide applications under 8 U.S.C. § 1184(p)(6) and cannot simply choose to ignore the law. Congressional intent has been clearly established to protect victims of crimes and USCIS is in clear violation of that intent by unreasonably delaying adjudication of employment authorization and refusing to implement 8 U.S.C. § 1184(p)(6). *See Rodriguez v. Nielsen*, 2018 WL 4783977 at *14 (E.D.N.Y. 2018) ("The text, timing, and legislative history of section 1184(p)(6) EAD Pending Petition demonstrate that Congress intended to extend work authorization to bona fide petitioners *prior* to an adjudication of their applications on the merits."). Even if this Court finds that the implementation of 8 U.S.C. § 1184(p)(6) is discretionary, the timeline shows congressional intent as to what is a *reasonable* time for a crime victim to be waiting for an EAD (less than one year).

The APA requires all agencies to conclude matters presented to them "within a reasonable time," 5 U.S.C. § 555(b), and provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A failure to act "is simply the omission of an action without formally rejecting a request — for example, the failure to promulgate a rule or take some decision by a statutory deadline." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). "When an administrative agency simply refuses to act upon an application, the proper remedy — if any — is an order compelling agency action." *McHugh v. Rubin*, 220 F.3d 53, 61 (2d Cir. 2000).

Defendants' refusal to comply with a statutory duty pursuant to section 1184(p)(6), meets the definition of agency action unlawfully withheld and entitles Plaintiffs to relief under the APA.

The court in *Rodriguez v. Nielson* found that "Defendants cite no authority — and the Court is

aware of none — suggesting that an agency can refuse to implement a statute where, as here,

Congress provides specific standards of eligibility for a benefit." *Rodriguez v. Nielson,* 2018

WL 4783977 at *13 (E.D.N.Y. Sept. 30, 2018). *See also St. Cyr*, 533 U.S. at 307–08.

To the extent the Court is persuaded by other courts that have refused to move Plaintiffs "to

the front of the line" placing them ahead of other similarly situated petitioners,[5] this movement is

not necessary because 8 U.S.C. § 1184(p)(6) provides a separate simple process for USCIS to

grant work authorization before a formal waitlist decision has been made. This is a simple,

bureaucratic determination that requires only verification that the application is complete and

includes the sworn statement from law enforcement. The sworn statement from law enforcement

acts as a check upon abusive or fraudulent applications. Plaintiffs have submitted bona fide

applications for U visa status and have a right to timely adjudication of their work authorization

documents. They have alleged enough facts to support the claim that adjudication of their

employment authorization document has been unreasonably delayed in violation of the APA.

c. **TRAC factor analysis is premature and a dismissal based on TRAC analysis is premature at this time.**

The D.C. Circuit Court established six factors that "are hardly ironclad" but may be used as

guidance to determine if agency action is unreasonable under the APA. *See Telecommunications*

*Research and Action Center v. FCC*, 750 F. 2d 70, 232 (D.C. Cir. 1984). TRAC factor analysis is

highly fact specific and is premature before the record has been developed through discovery.

The 4th Circuit and several district courts including this one have held that analysis of the TRAC

---

[5] *See Kobaivanova v. Hansen*, No. 11-cv-943, 2011 WL 4401687, at *6 n.5 (N.D. Ohio Sept. 16, 2011); *Mashpee*, 336 F. 3d at 1100; *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005)

factors is fact intensive and inappropriate to address at a motion to dismiss stage and before

discovery has been completed. *See Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)

(holding "[a] claim of unreasonable delay is necessarily fact dependent and thus sits

uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage");

*Ramires v. Wolf*, 2020 WL 6146393, *3 (D. N.M. 2020) (holding the same).

Defendants rely again on *Mashpee* to support their argument that the motion to dismiss

should be granted based on the TRAC factors. *Mashpee* involved an appeal of a grant of

summary judgment, not a motion to dismiss, and the analysis is therefore premature at this time.

*See Mashpee Wampanoag Trial Counsel, Inc. v. Norton*, 336 F.3d 1100 (D.C. Cir. 2003); See

also *Rodriguez v. Nielsen*, 2018 WL 4783977, at *21.

**d.  Analysis of TRAC factors shows that the delay in adjudication of Plaintiffs'
     petitions is unreasonable.**

This Circuit has found that the TRAC factors *may be* helpful as a guidance for the general

reasonableness standard when considering a discretionary time schedule. *See Forest Guardians

v. Babbit*, 174 F.3d 1178, 1191 (10th Cir. 1999). If the Court deems that an analysis of the TRAC

factors is appropriate at this time, it should deny Defendants' motion because all six factors

indicate that the delay is unreasonable in this case.

Many district courts utilizing the TRAC factors have found USCIS adjudication delays to be

unreasonable. *See, e.g.*, *Wang v. Gonzalez*, 2007 WL 4463009 (N.D. Cal. Dec. 17, 2007)

(holding a delay of two years in processing an adjustment of status application presumptively

unreasonable as a matter of law); *Ying He v. Gonzales*, 2007 WL 4259453 (N.D. Cal. Dec. 4,

2007) (finding a delay of two and a half years unreasonable and granting summary judgment

based on TRAC factors); *See also Mandhavi v. Gonzales*, 2007 U.S. Dist. LEXIS 86300 (N.D.

Cal. Nov. 21, 2007); *Wang Yi Chao v. Gonzales*, 2007 U.S. Dist. LEXIS 76257, 2007 WL

3022548 (N.D. Cal. Oct. 15, 2007); *Dong v. Chertoff*, 513 F.Supp.2d 1158 (N.D.Cal.2007); *Liu v. Novak*, 509 F. Supp 2d 1, 10 (D.D.C. 2007). The TRAC factors are briefly analyzed here to show that Plaintiffs have stated a claim upon which relief can be granted.

**1.  The time agencies take to make decisions must be governed by a rule of reason.**

Even the D.C. Circuit, which established the TRAC factors, determined that the ultimate issue in unreasonable delay cases is whether the delay violates the rule of reason. *See Mashpee* at 1102. The court in *Mashpee* determined that reasonableness is an issue that cannot be decided in the abstract, but rather depends on the complexity of the issue at hand, the significance and permanence of the outcome and the resources available to the agency. *Mashpee* at 1102.

The issue at hand here is much less complex than the issue in *Mashpee*. The Defendants are working with a two-step adjudication process which, rather than making the process more complicated, allows USCIS to issue EADs and deferred action before a visa is immediately available so that USCIS is not constricted by the statutory cap.

Additionally, Congress provided for an even faster route to providing an EAD which requires only verifying that the application is complete and contains a law enforcement certification under 8 U.S.C. § 1184(p)(6). This is hardly a complex issue. The outcome is not permanent, as USCIS could easily decide at a later stage that they will deny the petition and revoke the work authorization if the petition is not valid on its merits. Nor is the process resource intensive as it requires only a determination that the petition is complete, a determination which is usually done by low level clerks in the mailroom.  An application that is incomplete is typically rejected by the mailroom. Congress requires only a bona fide application before an EAD may be granted while crime victims are waiting for a more thorough adjudication of the merits of their case. It is

objectively unreasonable to expect vulnerable crime victims who cooperated with the police to

wait five years to be placed on a congressionally mandated waitlist.

2. **Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.**

Defendants assert that "Plaintiffs cannot state a claim for unreasonable delay because…there

is no timetable or other indication of the speed with which Congress expects the agency to

proceed with respect to U Visa petitions or accompanying applications for work authorization."

Doc. 4 at 21. The absence of a congressionally mandated deadline however does not give USCIS

the right to postpone a decision indefinitely. *See Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C.

Cir. 2001). Additionally, this factor indicates only that a congressionally mandated timetable "*or*

*other indication" "may"* supply content for the rule of reason, not, as Defendants assert, that a

lack of such timetable removes the requirement for USCIS to act reasonably.

Though Plaintiffs' applications are within the posted processing times of 59 to 59.5 months

as listed on the USCS website, this timetable was established by the agency itself, not by

Congress, and it is an unreasonable timetable. *See Singh v. Ilchert*, 784 F. Supp. 759, 764 (N.D.

Cal. 1992) (finding that "the mere fact that the INS promulgates a regulation establishing a time

period in which applications must be adjudicated does not, in and of itself, mean that an

adjudication within the time period cannot constitute unreasonable delay"). The existence of

such a lengthy timetable in itself shows that delays on adjudicating U visa applications to be

added to the waitlist have become unjustifiably lengthy and unreasonable especially given what

is at stake for vulnerable crime victims. Additionally, these timetables are estimates based on

petitions that were filed 59 months ago. There is no way to know how long adjudication will

actually take based on the current delays because any number of petitions could have been filed

between those that are currently being adjudicated and Plaintiffs' application. At the current pace

of adjudication (or lack thereof), Plaintiffs could easily be waiting six to eight years before they

receive any benefit or protection at all.

### 3. Delays that might be reasonable in the sphere of economic regulations are less tolerable when human welfare and health are at stake.

The health and welfare of Plaintiffs are at stake as they are unable to lawfully work and have

no deferred action protecting them from being removed. Plaintiffs are victims of serious crimes

including rape, kidnapping, domestic violence, and felony assault. *See* Doc 1. Despite potential

fears due to their lack of immigration status, Plaintiffs came forward and bravely cooperated

with the police to try and identify the perpetrators and keep their communities safer. At their

most vulnerable moments, while trying to overcome the trauma of the crimes they experienced,

Plaintiffs have been forced to live in fear without the protection of deferred action, and unable to

remove themselves from dangerous situations due to the lack of employment authorizations.

Though there may be other situations where a two-four year time period is reasonable for

administrative adjudication of a benefit, it is not reasonable in this situation because Plaintiffs'

health and welfare are at stake.

Defendants acknowledge that as a crime victim without employment authorization,

Plaintiffs' health and welfare are impacted. Doc. 4 at 21-22. They suggest however that the delay

is not unreasonable because *all* U Visa applicants have pressing economic or health concerns.

This logic would allow USCIS to indefinitely delay any and all adjudications as long as it treats

all applicants the same, completely circumventing the reasonableness standard required by the

APA.

### 4. The effect of expediting delayed action on agency activities of a higher or competing authority.

Defendants rely heavily on TRAC factor four, and state that there would be "no net gain from the judicial order Plaintiffs seek." Doc. 4 at 19. For this argument, Defendants again cite to *Mashpee*, to say that it is appropriate to refuse relief even when all other TRAC factors favor Plaintiffs, if a judicial order putting a petitioner at the head of the que would not produce any net gain. Doc 4. at 19. Plaintiffs reiterate that the adjudication in question in *Mashpee* was dramatically different than the adjudication in question in this case.[6] However, should the Court find the argument in *Mashpee* to be persuasive, it is still not relevant here because Defendants have an alternative means to provide Plaintiffs with an EAD that would not involve moving her to the head of any line. *See* 8 U.S.C. 1184(p)(6).

Though USCIS is experiencing a backlog of U Visa petitions and may have limited resources to dedicate to their adjudication, this does not excuse them from adjudicating applications within a reasonable time. Congress did not mandate that the agency act in a reasonable time frame unless it lacks resources, in which case it can take as long as it takes. Defendants rely on *Calderon-Ramirez,* where the 7th Circuit dismissed an unreasonable delay claim finding that, "[d]ue to the circumstances USCIS faces and the agency's recent changes to alleviate the backlog, we do not find [Plaintiff's] wait to be unreasonable *at this time*." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 276 (7th Cir. 2017)(emphasis added). This finding was based on USCIS' decision in 2016 to begin processing U-visa petitions at a second service center. USCIS argued in that case that it would take time for that change to be felt by petitioners. *Id*. It has,

---

[6] Defendants also cite to *Calderon-Ramirez*, 877 F.3d at 275–76 and *Gonzalez v. Cissna*, 364 F. Supp. 3d 579, 584 (E.D. NC 2019). The Court in *Gonzalez* found *Calderon-Ramirez* and *Mashpee* to be persuasive and the fourth TRAC factor to be all but dispositive. *Calderon-Ramirez* is no longer relevant because USCIS did not use their expanded resources to alleviate the backlog as the court gave them time to do. Other courts (cited above) have not given such weight to the fourth factor and have rather focused on the general rule of reason.

however, now been almost five years since this agency change and instead of wait-times decreasing, petitioners are now waiting even longer for adjudication of their EADs and a waitlist decision. Though at the time of deciding that case the court could not say that two years was unreasonable, that is no longer the case. USCIS has not alleviated the backlog and has not moved faster in making an initial determination to provide protections to crime victims, but has instead delayed adjudication even further more than doubling wait times since 2017.

Defendants claim that "USCIS has taken *several steps* in recent years to address the U visa backlog and ensure waitlist eligibility determinations are made as quickly as feasible." Doc. 4 at 7 (emphasis added). They did not offer any explanation however as to what these efforts are or why these efforts have created an even longer wait for U visa applicants to be placed on the waitlist, despite a decrease in the amount of applications received.[7] "[E]xtensive or repeated delays are unacceptable notwithstanding competing interests." *Muwekma Tribe v. Babbitt*, 133 F.Supp 2d 30, 40 (D.D.C. 2000). Five years to be placed on the waitlist is certainly an extensive delay.

Further, this Circuit has found the lack of resources argument to be unpersuasive when the government has a non-discretionary duty to act. *See Forest Guardians v. Babbitt*, 174 F.3d 1178. See also *Alkeylani v. DHS*, 514 F. Supp. 2d 258, 266 (D. Conn. 2007) ("While [lack of resources] may be a legitimate policy crisis, the Court will not excuse Defendants from their statutory duty and let the cost fall on immigrant Plaintiffs"); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 158 (D. Mass. 2007) ("If the agencies involved find themselves short of the resources

---

[7] USCIS report shows decrease in petitions received from 2017 to 2018 and again from 2018 to 2019. *See*: https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/Victims/I918u_visastatistics_fy2020_qtr1.pdf (Last accessed 6/2/20).

necessary to fulfill their statutory duty to act within a reasonable time, that is a policy

crisis…[b]ut it is not Plaintiffs who ask the Court to take on the burden of remedying this

crisis...[r]ather, it is defendants who ask the Court to relieve the pressure by excusing them from

their statutory duty and letting the costs fall on immigrant Plaintiffs.").

**5.   The nature and extent of interests prejudiced by delay.**

Defendants do not dispute that Plaintiffs have significant interests at stake, "[t]o be sure,

crime victims without employment authorization have significant interests at stake in the

adjudication of their U visa petitions, which undoubtably impact their health and welfare." Doc

4, at 21-22. They argue that all U visa petitioners share these interests and that some others have

even more pressing concerns. *Id*. These excuses however do not make Defendants' inaction

reasonable. *See Rodriguez v. Nielsen*, 2018 WL 4783977, at *15. ("The fact that USCIS has also

ignored other, similar applications does not inure to Defendants' favor or render its decision to

unlawfully withhold agency action reasonable.").

**6.   The court need not find any impropriety behind agency lassitude to hold that
       agency action is unreasonably delayed.**

Under this factor, no impropriety is required to hold that an agency action is unreasonable.

However, the history of USCIS' implementation (or lack thereof) of the U visa statute tends to

show a pattern of inaction that violates Congressional intent and prejudices crime victims.

USCIS failed to promulgate regulations implementing the U Visa program for several years until

Congress directed the agency to do so within 190 days in the Violence Against Women and

Department of Justice Reauthorization Act of 2005 ("Violence Against Women Act"), Pub. L.

109-162, 119 Stat. 2960. *See Rodriguez v. Nielsen*, 2018 WL at *2. Defendants have similarly

failed to implement 8 U.S.C. 1184(p)(6), allowing employment authorization to individuals with

pending bona fide u visa petitions. Actual adjudications of U visas are coming up at the heels of

the 59-month deferred action adjudication which makes the deferred action regime in place almost meaningless. Despite repeated attempts by Congress to protect victims of crime, Defendants have consistently delayed implementation of statutes and adjudication of petitions. Additionally, Defendants continue to use their resources to fight litigation over the unreasonable delay, despite the fact that they have lost this fight in the majority of district courts and now the 4th Circuit. The natural inference is impropriety on the part of the agency.

### III.    The Complaint states a claim upon which relief may be granted under the Mandamus Act, 28 U.S.C. § 1361.

The Mandamus Act, 28 U.S.C. § 1361, grants authority to this Court to compel Defendants to perform a duty owed to Plaintiffs. Defendants have a regulatory, ministerial obligation to place all eligible petitions for U nonimmigrant status on the waiting list. 8 C.F.R. § 214.14(d). Defendants argue that Mandamus relief is unavailable because USCIS "lacks a clear, nondiscretionary duty to adjudicate Plaintiffs' U visa petitions and EAD applications before those filed earlier." Doc. 4 at 24. Defendants are required to place *all* eligible petitioners for U nonimmigrant status on the waiting list, and they are required to do so in a reasonable period of time under the APA. It is irrelevant that there is no requirement to place them ahead of those who filed earlier as Defendants' nondiscretionary duty applies *to all eligible petitioners*. *See* 8 C.F.R. § 214.14(d).

Additionally, under 8 U.S.C. 1184 § (p)(6), Defendants have an obligation to adjudicate work authorization applications for individuals who have presented bona fide petitions for U nonimmigrant status. Defendants conflate their discretionary decision to grant or not grant a benefit with their nondiscretionary duty to adjudicate petitions for benefits within a reasonable time frame.

21

All Plaintiffs have pending, bona fide applications for nonimmigrant status under 8 U.S.C. § 1101(a)(15)(U). Defendants have withheld waitlist determinations and adjudication of Plaintiffs' EADs for two to four plus years. The Supreme Court has described mandamus relief under 28 U.S.C. § 1361 as an "extraordinary remedy" which "will issue only to compel the performance of 'a clear nondiscretionary duty.'" *Pittson Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). Plaintiffs have stated a claim for mandamus relief because Defendants have a clear nondiscretionary duty both to make a waitlist determination under 8 C.F.R. § 214.14(d) and to adjudicate Plaintiffs' EADs under 8 U.S.C. § 1184(p)(6). Even if the Court finds that § 1184(p)(6) is purely discretionary, Plaintiffs are still clearly entitled to a waitlist determination.

Mandamus is appropriate in this case, and the Court should compel Defendants to act. "If, after studying the statute and its legislative history, the court determines that the defendant official has failed to discharge a duty which *Congress intended him to perform*, the court *should* compel performance, thus effectuating the congressional purpose." *Estate of Smith v. Heckler,* 747 F.2d 583, 591 (10th Cir.1984) (emphasis added); *see also Mt. Emmons Mining Co. v. Babbitt,* 117 F.3d 1167, 1170 (10th Cir. 1997) ("[A]s a reviewing court, we *must* compel agency action unlawfully withheld or unreasonably delayed." (emphasis added, internal quotations omitted).

Should the Court find that dismissal of the APA claim is warranted for any reason, the Court should refuse to dismiss the mandamus claim as there would be no adequate alternative remedy at law.

**IV.**    **Plaintiffs have a right to Declaratory Judgment under 28 U.S.C. 2201.**

Pursuant to 28 U.S.C. § 2201 et seq. the Court may declare the rights of the parties and such declaration shall have the force and effect of a final judgment or decree. Defendants in this case have failed to adjudicate Plaintiffs' applications for U nonimmigrant status and determine if they should be placed on the waitlist. Defendants have also failed to adjudicate their applications for employment authorization pursuant to 8 U.S.C. § 1184(p)(6). This failure to act is against the law, has caused, and continues to cause harm to Plaintiffs. Therefore, issuance of a declaratory judgment that Defendants' lack of action is against the law and violates the APA is warranted.

<u>**CONCLUSION**</u>

Plaintiffs' claims state actionable causes under the APA, the Mandamus Act, and Declaratory Judgment. Accordingly, Plaintiffs respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.

<u>/s/ Heather Kryzak.</u>
Heather Kryzak
Attorney for Plaintiffs
Noble & Vrapi, P.A.
5931 Jefferson St. NE, Suite A
Albuquerque, NM 87109
Phone: (505) 352-6660
Fax: (505) 872-6120
heather@noblevrapi.com


<u>/s/ Olsi Vrapi.</u>
Olsi Vrapi
Noble & Vrapi, P.A.
5931 Jefferson St.. NE, Suite A
Albuquerque, NM 87109
Phone:  (505) 352-6660
Fax:  (505) 872-6120

olsi@noblevrapi.com

/s/ Amber Weeks.
Amber Weeks
Noble & Vrapi, P.A.
5931 Jefferson St.. NE, Suite A
Albuquerque, NM 87109
Phone:  (505) 352-6660
Fax:  (505) 872-6120

amber@noblevrapi.com


*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2021, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Heather Kryzak*
HEATHER KRYZAK
Attorney for Plaintiffs