IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAZMIN LIZBETH CISNEROS BUSTOS, *et al.*,

    Plaintiffs,

vs.                                                                 No. CV 20-1348 KG/SMV

ALEJANDRO MAYORKAS, U.S. Secretary
of Homeland Security;[1] TRACY RENAUD,
Acting Deputy Director of U.S. Citizenship and
Immigration Services;[2] US CITIZENSHIP
AND IMMIGRATION SERVICES, an agency of the
United States; MERRICK B. GARLAND,
U.S. Attorney General;[3] CHRISTOPHER WRAY, Director
of Federal Bureau of Investigation; and the FEDERAL
BUREAU OF INVESTIGATIONS; in their official capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On March 5, 2021, Defendants filed a motion seeking dismissal of Plaintiffs' Complaint. Doc. 4. Plaintiffs are foreign nationals who have applied for U visas. Their three-count Complaint alleges: (1) Plaintiffs have a right to a declaratory judgment that Defendants have violated the law and caused them harm by failing to adjudicate their petitions for U visa status within a reasonable time; (2) Plaintiffs have a right to relief under the Administrative Procedures Act (APA) because Defendants have unreasonably delayed adjudicating their U visa petitions; and (3) Plaintiffs have a claim for mandamus relief under 28 U.S.C. § 1361. Doc 1 ¶¶ 140, 147, 5. In their motion, Defendants contend that Counts Two and Three are not properly before the

---

[1] On February 2, 2021, Alejandro Mayorkas became U.S. Homeland Security Secretary and is substituted for Chad Wolf.
[2] On August 3, 2021, Tracy Renaud became the Acting Deputy Director of the United States Citizen and Immigration Services (USCIS) and is substituted for Kenneth T. Cuccinelli.
[3] On March 11, 2021, Merrick B. Garland became U.S. Attorney General and is substituted for William Barr.

1

Court because either (1) the Court lacks subject matter jurisdiction over Plaintiffs' claims under Federal Rule of Civil Procedure (Rule) 12(b)(1), or (2) the Plaintiffs have failed to state plausible claims under Rule 12(b)(6). The Motion is fully briefed.[4]

After considering the parties' briefing, the record of the case, and the applicable law, the Court will grant Defendants' Motion, in part, and will deny it in part.

## I. STATUTORY AND FACTUAL BACKGROUND

Visas grant foreign nationals lawful admission into the United States. Generally, visas fall into one of two groups: immigrant or nonimmigrant. Foreign nationals who wish to live permanently in the United States must acquire an immigrant visa, while those seeking temporary residence must obtain a nonimmigrant visa. *See* 8 USC § 1101(15) (explaining that "[t]he term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens"). The Immigration and Nationality Act ("INA"), 66 Stat. 163, as amended, 8 U.S.C. § 1101 *et seq.*, outlines the visa categories and delineates the procedures for obtaining them. *See* § 1151 (describing categories of immigrant visas); § 1101(15) (delineating categories of nonimmigrant visas).

One category of nonimmigrant visa is commonly known as a "U visa" because it is described in subsection (U) of the statute that defines it, § 1101(a)(15)(U). The U visa program was created in 2000 by the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513(a)(2)(B), 114 Stat. 1464, 1533 (codified at 8 U.S.C. § 1101(a)(15)(U). Authority to promulgate regulations implementing the time and conditions of nonimmigrant admission resides in the Attorney General. § 8 U.S.C. § 1184(a)(1).

---

[4] *See* Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss and Memorandum in Support (Doc. 5), and Defendants' Reply in Support of Motion to Dismiss (Doc. 6). After briefing was completed, both parties filed notices of supplemental authorities. Doc. 8, 9, 11. Defendants responded to Plaintiffs' notice on July 21, 2021. Doc. 10.

The United States Citizenship and Immigration Services (USCIS) administers the U visa program. *See* 6 U.S.C. § 271(b)(1) (granting USCIS authority for "[a]djudications of U visa petitions"); *see also* 8 U.S.C. §§ 1103(a)(1), (g)(1) (explaining powers and duties), 1184(p)(6) (explaining process). To demonstrate eligibility for a U visa, petitioners must show that they have (1) suffered substantial physical or mental abuse as a result of having been a victim of criminal activity, and (2) that they possess information about that criminal activity, (3) that will be helpful to law enforcement authorities. §1101(a)(15)(U)(i)(I)–(IV). Certain family members of the petitioner are also eligible for derivative U visa status. § 1101(a)(15)(U)(ii).

Only 10,000 U visas are available within a calendar year. 8 U.S.C. § 1184(p)(2)(A). Derivative petitions are not subject to the cap but depend on the principal petition. *Id.* § 1184(p)(2)(B); 8 C.F.R. § 214.14(f)(2). Because the demand for U visas exceeds supply, petitioners usually pass through two stages in the petition process.

First, the petitioner must apply for the U visa by filling out form 1-918, Petition for U Nonimmigrant Status. *See* 8. C.F.R. § 214.14(c)(1) (explaining application process). If USCIS determines that the applicant meets the eligibility requirements, the approved petitioner either receives U visa status or, if the U visa cap has been met that year, the eligible petitioner is put on a waitlist until a U visa becomes available. § 214.14(d). Each year, U visas are distributed to those on the waitlist in date order, so the petitioners who have been on the waitlist the longest are typically the first to receive an available U visa. § 214.14(d)(2) (stating that with some exceptions the oldest petitions will have the highest priority). Those on the waitlist remain there from five to ten years before receiving U visa status. Once a petitioner receives U visa status, the petitioner is entitled to temporary lawful residence and an employment adjustment document (EAD). 8 U.S.C. § 1184(p)(3)(B), *see also* 8 C.F.R. §§ 214.14(c)(7) (petitioners "granted U-1

3

nonimmigrant status [are] employment authorized incident to status"). After a nonimmigrant with U visa status has been continuously physically present in the United States for three years, the nonimmigrant may apply for an adjustment of status to that of a person admitted for permanent residence. 8 U.S.C.A. § 1255(m).

While on the waiting list, a petitioner and qualifying family members in the United States receive deferred action or parole. 8 C.F.R. § 214.14(d)(3). "Deferred action" is an INS practice of declining "to institute proceedings, terminate proceedings, or declin[ing] to execute a final order of deportation." *Reno v. Am-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (internal quotations and citation omitted). "Parole" permits the Attorney General to allow a nonimmigrant to be temporarily present in the United States. But parole is not a legal admission to the United States as defined by the INA. *See* 8 U.S.C. § 1182(d)(5)(A). Waitlisted petitioners are not entitled to EADs, except "USCIS, in its discretion may authorize [EADs] for those on the waitlist." § 1184(p)(6).

On June 14, 2021, USCIS announced a new policy that for certain petitioners accelerates processing of U visa petitions. Doc. 9-1 (USCIS Policy Alert PA-2021-13 Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment Authorization and Deferred Action for Certain Petitioners ("Policy Alert")). Doc. 9-1. The new policy implements language in § 1184(p)(6) that permits the Secretary of Homeland Security to "grant work authorization [EADs] to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." *See id.* at 1–2 n.6. The policy states that "[d]ue to drastic increases in the volume of U nonimmigrant petitions and a growing backlog awaiting placement on the waiting list for final adjudication," USCIS will conduct an initial bona fide determination (BFD) review of pending petitions. *Id.* at 2. Applicants for U visas may receive a

BFD if (1) "the principal petition is bona fide," (2) the principal petitioner does not "pose a risk to national security or public safety," and (3) "the principal petitioner warrants a favorable exercise of discretion to receive employment authorization under INA 214(p)(6)." *Id.* A BFD exempts the petitioner from full waiting list adjudication and grants the petitioner and qualifying family members EADs and deferred action for four years. *Id.* If the petitioner does not receive a BFD, the petitioner's application will be set aside for full administrative waitlist review. *Id.*

All 90 Plaintiffs are nonimmigrants who are either "victims of serious crimes, or close family members of the direct victims who qualify for derivative status." Doc. 1 ¶ 2. Sometime between November 2016 and January 2019, each Plaintiff completed the I-918 Petition for Nonimmigrant status. *Id.* § 6. Seventy-five of the Plaintiffs have filed applications for EADs with their U visas. *Id.* § 7. As of July 21, 2021, none of the Plaintiffs had received U visas, waitlist placement, BFDs, or EADs. *Id.* § 8, Doc. 9 at 2.

## II. ANALYSIS

Plaintiffs' claims rest on allegations that Defendants have unreasonably delayed processing their U visa petitions. Defendants argue that the Court does not have subject matter jurisdiction over these claims, because the pace at which USCIS processes a U visa petition or an EAD is a discretionary decision shielded from judicial review. Alternatively, Defendants assert that under Rule 12(b)(6) the Court must dismiss the Complaint, because Plaintiffs have not alleged facts that support their allegations that USCIS has unreasonably delayed processing their U visa petitions or EAD applications.

### A. Subject Matter Jurisdiction

#### 1. Legal Standard

Federal courts are courts of limited jurisdiction that "possess only that power authorized

5

by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted). Congress has granted federal courts jurisdiction over claims arising under federal law. *See* 28 U.S.C. § 1331; *Mims v. Arrow Fin. Servs.*, 565 U.S. 368, 379 (2012) (discussing the origin of federal question jurisdiction). Federal courts must presume that they retain jurisdiction over a federal question unless Congress "expressly or by fair implication" divests it. *Mims*, 565 U.S. at 379. "[I]n the main [federal courts] have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. *Id.* at 376

Complaints may be facially or factually insufficient in establishing jurisdiction. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack" a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). A movant making a factual attack may go beyond the allegations and examine evidence outside the complaint. *Id.* (citing *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015)).

**2. Discussion**

**The INA does not shield Count II from judicial review**

The parties agree that Plaintiffs have a "right to a ruling" on their U visa petitions. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 308 (discussing the difference between a right and a decision). They also agree that USCIS' decision to award U visa status is discretionary and statutorily protected from judicial review. What they disagree about is whether the INA makes USCIS' decision on the merits of a U visa petition a discretionary process or whether that process is simply separate, nondiscretionary administration. Defendants argue the former, Plaintiffs the

6

latter.

Defendants support their argument with an analysis of § 1252(a)(2)(B)(ii) which precludes judicial review of any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security...." Defendants suggests that "[t]he term 'action' must encompass the discretionary pace at which the ... process proceeds because it encompasses various other discretionary acts that constitute the process as a whole and that direct the pace of the process." Doc. 4 at 12. Plaintiffs counter that Defendants' argument ignores the full text of § 1252(a)(2)(B)(ii) which does not shield all discretionary decisions but only those decisions that are "specified under the INA to be discretionary." Doc. 5 at 6. (quoting *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003)). Because the INA does not specify that an adjudicatory process is discretionary, Plaintiffs conclude that § 1252(a)(2)(B)(ii) does not make it so.

While Defendants concede that no statute grants the Attorney General the authority to decide the time frame for USCIS to adjudicate U visa petitions, they assert that the INA gives the Attorney General implied authority. Defendants support this premise with the text of § 1184 which provides that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe." According to Defendants, the language granting the Attorney General the authority to promulgate regulations about the "time" and "conditions" of nonimmigrant admission means that any matter for which the agency may create a regulation makes the substance of the regulation discretionary. Although now no timetable regulation exists, Defendants conclude that the agency's authority to create one means the pace is also a discretionary process.

Plaintiffs respond that the absence of a statutory timetable does not automatically grant the agency unfettered discretion to create one. Doc. 5 at 4. Statutory silence about whether an agency's decision is subject to judicial review, Plaintiffs say, does not automatically preclude review. *Id.* at 5. Plaintiffs have the better argument. In *Kucana v. Holder*, 558 U.S. 233 (2010), the Supreme Court addressed and dismissed Defendants' textual argument.

In *Kucana,* the Supreme Court examined the language of § 1252(a)(2)(B)(ii) and found that the words "any action of the Attorney General 'the authority for which is specified under this subchapter'" indicates that "Congress barred court review of discretionary decisions ***only*** when Congress itself set out the Attorney General's discretionary authority in the statute." *Id.* at 247 (emphasis added). The *Kucana* Court found that the omission of the word "regulation" in § 1252(a)(2)(B)(ii) showed that Congress did not intend to extend the jurisdictional bar to "decisions specified as discretionary by regulation along with those made discretionary by statute." *Id.* As explained by *Kucana*, if there is no statutory authority that plainly states that a decision is discretionary, the decision is not protected from review by § 1252(a)(2)(B)(ii). *Id.*; *see also Luevano v. Holder*, 660 F.3d 1207, 1213 (10th Cir. 2011) (recognizing that *Kucana* abrogated the Tenth Circuit's ruling in *Yerkovich v. Ashcroft*, 381 F.3d 990, 995 (10th Cir. 2004), that decisions made discretionary by regulation came within the statutory bar)).

*Kucana* applies here. The INA does not address the pace at which USCIS must adjudicate U visa petitions. Without a specific statutory delegation to the Attorney General of discretionary authority to establish a timetable, USCIS's regulatory decisions about the pace are not statutorily excluded from judicial review. The Court concludes that the INA does not prohibit this Court's review of Plaintiffs' claim that USCIS has unreasonably delayed adjudicating U visa application.

### The APA does not prohibit judicial review of Count Two

Next, Defendants argue that the APA divests district courts of the authority to consider Plaintiffs' claims. APA, 5 U.S.C. § 701(b)(2)). The APA is a broader statute than the INA as it applies to all administrative agency action. Like the INA, the APA prohibits federal district court review when "agency action is committed to agency discretion by law." But the APA permits suits by "[a] person suffering [a] legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." § 702. An "agency action" is an action that is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." § 551(13). Only final agency actions are reviewable. § 704.

When a plaintiff premises a claim on a "failure to act," a district court can review that claim only "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original) (explaining that a "failure to act" is limited to a "discrete action"—or an "omission of an action without formally rejecting a request"); *see also Utah Native Plant Soc'y v. United States Forest Serv.*, 923 F.3d 860, 874 (10th Cir. 2019) (same). Required agency actions are those demanded by law and are reviewable if the "agency action [is] unlawfully withheld or unreasonably delayed." § 706(1). To prove that a claim is reviewable under the APA, a plaintiff must show (1) a nondiscretionary duty to act, and (2) that the agency delayed acting on that duty. *Id.*

Plaintiffs observe that the APA statutorily requires agencies to conclude matters presented to them within a "reasonable time." § 555 (stating "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time,

9

each agency shall proceed to conclude a matter presented to it." USCIS' obligation to process U visa petitions, Plaintiffs submit, establishes a discrete nondiscretionary duty to adjudicate them within a reasonable time.

Defendants agree that an agency is required to process a U visa application within a reasonable time, but they disagree as to who gets to decide the meaning of "reasonable time." Disputing Plaintiffs' argument that what constitutes a "reasonable time" is an objective standard reviewable by a district court, Defendants counter that the definition of "reasonable time" is a subjective standard committed to an agency's discretion. Plaintiffs' argument founders, Defendants state, because it disregards that when USCIS decides to process one of many petitions, USCIS is making a discretionary decision about which to process first.

The question whether a failure to act in one context is a form of action in another context is unresolved by the courts. *See, e.g., Cruzan by Cruzan v. Dir., Missouri Dep't. of Health,* 497 U.S. 261, 296 (1990) (Scalia, J. concurring) (stating that it is "unreasonable to draw the line precisely between action and inaction, rather than between various forms of inaction"). Fortunately, this Court need not wrestle with that issue now, because the Tenth Circuit has clarified when a court can review a "failure to act" in the framework of an "agency action unlawfully withheld or unreasonably delayed." § 706(1).

In *Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999), the Tenth Circuit examined whether the Secretary of the Interior's failure to designate a critical habitat by a statutory deadline for an endangered species was an action reviewable by the district court. *Id.* at 1181. After the Secretary missed the deadline, two environmental organizations sued, alleging that the Secretary had violated the Endangered Species Act, ("ESA"), 16 U.S.C. § 1533(a)(3), by not complying with the statutory deadline. *Id.* Plaintiffs asked the district court for a

10

declaration that the Secretary had violated the ESA and an injunction compelling the Secretary to issue a final rule. *Id.* In response, the Secretary admitted that there had been a deadline but could not comply because of a spending moratorium. *Id.* Finding that it did not have jurisdiction over the Complaint, the district court denied the plaintiffs' motion to review agency action and stayed the case. *Id.* The Tenth Circuit reversed.

In deciding whether the district court had the authority to compel the Secretary to act, the Tenth Circuit explored the text of § 706(1) and parsed the terms "unlawfully withheld" and "unreasonably delayed." The Tenth Circuit found that the difference between the two phrases depended on whether there was a statutory deadline. An action is unlawfully withheld, the Tenth Circuit explained, when a statute sets a specific deadline for the agency to act. *Forest Guardians*, 174 F.3d at 1190. An action is "unreasonably delayed" when there is only a statutory admonition to act "within an expeditious, prompt, or reasonable time . . .." *Id.* In the latter case, the Tenth Circuit observed, "§ 706 leaves in the courts the discretion to decide whether agency delay is unreasonable." *Id.*; s*ee also Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 77 (D.C. Cir. 1984) (finding that "section 706(1) coupled with section 555(b) does indicate a congressional view that agencies should act within reasonable time frames and that courts designated by statute to review agency actions may play an important role in compelling an agency action that has been improperly withheld or unreasonably delayed,") (citations omitted)).

*Forrest Guardian* provides this Court with important guidance. The APA requires USCIS to conclude matters presented to it within a "reasonable time." Neither the INA nor the APA define "reasonable time", nor do they set a firm deadline for adjudicating U visas. Nothing in either statute exempts USCIS from the reasonable time requirement in § 555 when processing U visas. Following the guidance provided by *Forest Guardians,* the Court finds that § 706(1)

permits it to examine whether the pace of the required decision making has been unreasonably delayed.[5]

But the statutory authority that permits judicial review of the timeliness of U visa adjudication does not authorize review of EAD applications. The INA does not mandate separate adjudication of an EAD application. That is because a petitioner is not statutorily entitled to an EAD until USCIS decides to award U visa status. Although § 1184(p)(6) enables USCIS to consider an EAD application before assessing a U visa petition, whether to do so is at its discretion.[6]

Nor does the new policy change the analysis. Whether a nonimmigrant's U visa petition proceeds through a full waitlist review or through the BFD pathway, the right to an EAD is

---

[5] The Fourth and Seventh Circuit have assumed without formally deciding that a federal court may consider whether USCIS has unreasonably delayed processing U visa petitions. *See Gonzalez v. Cuccinelli*, 985 F.3d 397, 374–75 (4th Cir. 2021) (remanding for further factual findings about whether there had been unreasonable delay); *cf Calderon-Ramirez v. McCament*, 877 F.3d 272, 276 (7th Cir. 2017) (tacitly finding subject matter jurisdiction by acknowledging that USCIS has a duty to process U visas within a reasonable time but finding that a one-and-a-half-year wait was not unreasonable). Only the Fifth Circuit has reached the opposite conclusion. *See Bian v. Clinton*, 605 F.3d 249, 253-55 (5th Cir. 2010) *vacated as moot*, 2010WL 3633770 (5th Cir. Sept. 16, 2010) (finding that it was without subject matter jurisdiction under the INA, the APA, or the mandamus act to review the pace of the adjudication of an 1-485 application because without a timeframe, "how" USCIS chose to adjudicate a petition was discretionary).

District courts have divided on this matter. *Compare M.J.L. v. McAleenan*, 420 F. Supp. 3d 588 (W. D. Texas, 2019) (finding that the APA gave the court authority to examine the timeliness of USCIS' adjudication of U visas and distinguishing *Bian* because it did not address U visa petitions); *with Beshir v. Holder*, 101 F. Supp. 3d. 165, (D. C. C. 2014) (finding that "the plain language of the relevant federal statutes, the absence of a congressionally mandated timeline, and the national security considerations of the adjudication process" indicate that the pace of adjudication is discretionary). Defendants' notices of supplemental authority, Docs 8, 11, proffer additional district court cases that support Defendants' arguments. There are equally as many cases finding otherwise. *See Mondragon Tinoco v. Mayorkas*, No. 1:20-cv-4787, 2021 WL 3603373 at *4–6 ( N. D. Ga. August 13, 2021) (discussing authority finding that district courts have subject matter jurisdiction and collecting cases) Because the Tenth Circuit has given important guidance in *Forrest Guardian*, the Court will not consider these cases further.

[6] In 2008, the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPRA"), Pub. L. 110-457, December 23, 2008, 122 Stat. 5044, amended § 1184 to include the language that grants USCIS the authority to grant EADs to bona fide petitions. Although Plaintiffs admit that whether to award the EAD is discretionary, they contend that the TVPRA provides a framework for the Court's determination of what constitutes a "reasonable" time. Plaintiffs argue that the TVPRA's amending language in § 1184 coupled with the bill sponsors' intent that USCIS award EAD within a year, establishes that a one-year time frame is reasonable. Doc. 5 at 13. Because the Court finds that it does not have subject matter jurisdiction over Plaintiffs' EAD claims, the Court will not address this argument further.

always tethered to a substantive discretionary decision about a U visa petition. *See Gonzalez*, 985 F.3d at 366-371 (thoroughly analyzing why the agency's failure to timely adjudicate EADs is unreviewable). The INA does not give petitioners seeking a U visa a standalone right to an EAD, so there is no concomitant requirement for USCIS to process EAD applications within a reasonable time. For this reason, the Court finds that it does not have subject matter jurisdiction over Plaintiffs' claims that USCIS have unreasonably delayed awarding them EADs.

## B. Whether Plaintiffs have alleged plausible claims

### 1. Legal Standard

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (further citation omitted). "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability." *Moya v. Garcia,* 895 F.3d 1229, 1232 (10th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The term "plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

555. A mere "formulaic recitation of the elements of a cause of action will not do." *Id.* When analyzing the sufficiency of the allegation under Rule 12(b)(6), a court may consider documents incorporated into the complaint by reference and undisputed as to authenticity. *Smith*, 561 F.3d at 1098.

### 2. Discussion

Defendants contend that Plaintiffs' complaint is not plausible because Plaintiffs have not alleged sufficient facts backing their claims of unreasonable delay. To support this argument, Plaintiffs recite six factors found in *Telecommunications Research and Action Center*, 750 F.2d 70, that courts commonly use to examine the reasonableness of an agency's actions. These factors, known as the TRAC factors, ask a court to evaluate the following:

> 1) the time agencies take to make decisions must be governed by a rule of reason; 2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; 3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human welfare and health are at stake; 4) the effect of expediting delayed action on agency activities of a higher or competing authority; 5) the nature and extent of the interests prejudiced by delay; and 6) the court need not find any impropriety behind agency lassitude to hold that agency action is unreasonably delayed.

*Id.* at 80. Defendants argue that each of these factors weigh in favor of their Motion. Plaintiffs disagree.

The Court concurs with Defendants that the TRAC factors provide helpful guidance to a court but finds that it is too early in the proceedings for them to be of use. Most of the TRAC factors require a court to go beyond the allegations in the Complaint and make factual findings about matters outside the pleadings. "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstance before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.*

*C. Cir. 2003)*; *see also Gonzales*, 985 F.3d at 375 (finding that the TRAC factors were not helpful at the motion to dismiss stage because "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage.").

Here, Plaintiffs have alleged that USCIS have taken more than three years to process their claim. If Plaintiffs' petitions are accepted and they attain U visa status, they receive certain benefits, namely an EAD and deferred status. As alleged by Plaintiffs, any delay by Defendants may result in significant harm to their interests. Those nonimmigrants who are in the United States have not been lawfully admitted and may be deported. Moreover, they are not legally able to work. While the new Policy Alert changes USCIS's approach to processing U visas and offers the possibility of an alternate, quicker route to U visa status, as a matter of law, it does not change Plaintiffs' arguments that there has been an unreasonable delay. To be sure, the existence of a new policy is an important fact to consider, but alone it does not provide the Court with sufficient information. Plaintiffs' allegations have raised their right to relief above a speculative level and so the Court will deny Defendants' motion to dismiss Count Two.

## C. Mandamus

Defendants also ask the Court to dismiss Plaintiffs' Count Three claim for mandamus relief. As codified in 28 U.S.C. § 1361, district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is a drastic remedy "to be invoked only in extraordinary situations," *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980), and it is an extraordinary one not available when review by other means is possible, *Kerr v. U.S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 403 (1976). "To be eligible for mandamus

relief, the petitioner must establish "(1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Ziglar,* 398 F.3d 1201, 1206 (10th Cir. 2005) (citation omitted). Plaintiffs have shown that they meet prongs (1) and (2) of the test. The question remaining before the Court is whether mandamus relief is Plaintiffs' only adequate remedy.

The APA permits plaintiffs to seek redress for agency action "unreasonably delayed." If a reviewing court finds in Plaintiffs' favor, § 706(1)(B) states that the court "shall—compel agency action." In this manner, § 706(1)(b) incorporates the mandamus remedy into the APA. *See Norton*, 542 U.S. at 65. "The two statutes [APA and Mandamus] are, after all, merely different means of compelling an agency to take action which by law it is required to take." *Hernandez-Avalos v. I.N.S.*, 50 F.3d 842, 844 (10th Cir. 1995) (internal quotations and citations omitted). The statutory remedy provided by § 706(1) is an adequate remedy available to Plaintiffs that precludes mandamus relief. *Mt. Emmons Min. Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997). On these grounds, the Court will dismiss Count III.

### III. CONCLUSION

While the substantive decision about whether to award a U visa is solely within USCIS' discretion, the timeframe within which USCIS must do so is not. USCIS must statutorily process U visa petitions within a reasonable time, and whether it has done so is a question reviewable by a federal court. But USCIS is not similarly obligated to process EADs, and the granting of the EAD is tied to USCIS' substantive decision about whether to award U visa status, so the Court does not have subject matter jurisdiction over that claim alone.

The definition of what constitutes a reasonable time is a fact specific inquiry. At this stage of the proceedings, it is premature for the Court to render a decision about whether USCIS

has conformed to the reasonableness standard.

Finally, because § 706(1)(B) provides Plaintiffs with an adequate statutory avenue to pursue their claims, mandamus relief is not available.

IT IS ORDERED THAT Defendants' Motion to Dismiss (Doc.4) is GRANTED in part and DENIED in part:

1. Defendants' Motion to Dismiss Count Two of Plaintiffs' claim that Defendants have unreasonably delayed processing Plaintiffs' U visa petitions is DENIED;

2. Defendants' Motion to Dismiss Plaintiffs' claim that Defendants have unreasonably delayed processing employment adjustment documents for Plaintiffs is GRANTED;

3. Defendants' Motion to Dismiss Plaintiffs' request for mandamus relief is GRANTED.

_____
UNITED STATES DISTRICT JUDGE